No. 12-1150

# In the United States Court of Appeals for the Third Circuit

JOHN DRAKE, et al.,

Plaintiffs-Appellants,

v.

THE HON. RUDOLPH A. FILKO, et al.,

Defendants-Appellees.

Appeal from a Judgment of the United States District Court for the District of New Jersey, The Hon. William H. Walls, District Judge (District Court No. 02:10-CV-6110)

## APPELLANTS' PETITION FOR REHEARING EN BANC

David D. Jensen
David Jensen PLLC
111 John St., Suite 230
New York, NY 10038
212.380.6615/917.591.1318

Alan Gura
Gura & Possessky, PLLC
101 N. Columbus St., Suite 405
Alexandria, VA 22314
703.835.9085/703.997.7665

August 14, 2013

CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellant Second Amendment Foundation, Inc. has no parent corporation, and no publicly held corporation owns its stock.

Plaintiff-Appellant Association of New Jersey Rifle & Pistol Clubs, Inc. has no parent corporation, and no publicly held corporation owns its stock.

# TABLE OF CONTENTS

Table of Authorities......................................... ii

Statement of the Case........................................ 1

Argument.................................................... 4

I.   THE DECISION CONFLICTS WITH THIS CIRCUIT'S TREATMENT OF
     HELLER'S "LONGSTANDING," "PRESUMPTIVELY LAWFUL"
     RESTRICTIONS........................................... 4

II.  THE DECISION'S HOME-CENTERED RATIONALE CONFLICTS WITH
     HELLER AND THE PRIOR DECISIONS OF THIS COURT............ 8

III. THE MAJORITY DID NOT PROPERLY APPLY INTERMEDIATE
     SCRUTINY.............................................. 12

Conclusion................................................. 15

# TABLE OF AUTHORITIES

## Cases

*Andrews* v. *State*,
     50 Tenn. (3 Heisk.) 165, 1871 Tenn. LEXIS 83 (1871) . . . . . . . . 8

*Bd. of Trs. of State Univ. of N.Y.* v. *Fox*,
     490 U.S. 469 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*District of Columbia* v. *Heller*,
     554 U.S. 570 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*English* v. *State*,
     35 Tex. 473, 1872 Tex. LEXIS 91 (1872) . . . . . . . . . . . . . . . . . . . 8

*Fife* v. *State*,
     31 Ark. 455, 1876 Ark. LEXIS 69 (1876) . . . . . . . . . . . . . . . . . . . 8

*Kachalsky* v. *County of Westchester*,
     701 F.3d 81 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*McDonald* v. *Chicago*,
     130 S. Ct. 3020 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Moore* v. *Madigan*,
     702 F.3d 933 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . 3, 8, 10, 12

*Turner Broad. Sys., Inc.* v. *FCC*,
     512 U.S. 622 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States* v. *Barton*,
     633 F.3d 168 (3d Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*United States* v. *Huet*,
     665 F.3d 588 (3d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . 5, 14

*United States* v. *Marzzarella*,
    614 F.3d 85 (3d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*United States* v. *Torres-Rosario*,
    658 F.3d 110 (1st Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Ward* v. *Rock Against Racism*,
    491 U.S. 781 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Wilson* v. *State*,
    33 Ark. 557, 1878 Ark. LEXIS 97 (1878).. . . . . . . . . . . . . . . . . . . 8

Statutes and Rules

1924 N.J. Laws ch. 137, § 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

1966 N.J. Laws ch. 60, sec. 32, § 2A:151-41(a). . . . . . . . . . . . . . . . . 6

N.J. Admin. Code § 13:54-2.4(d)(1).. . . . . . . . . . . . . . . . . . . . . . . . 2

N.J. Stat. § 2C:39-5(b).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

N.J. Stat. § 2C:39-6(e)-(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

APPELLANTS' PETITION FOR REHEARING EN BANC

We express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to decisions of the United States Court of Appeals for the Third Circuit and the Supreme Court of the United States, and that consideration by the full court is necessary to secure and maintain uniformity of  decisions in this court, *i.e.*, the panel's decision is contrary to the decisions of this court in *United States* v. *Marzzarella*, 614 F.3d 85 (3d Cir. 2010), and of the Supreme Court in *District of Columbia* v. *Heller*, 554 U.S. 570 (2008), and *McDonald* v. *Chicago*, 130 S. Ct. 3020 (2010). This appeal also involves a question of exceptional importance, *i.e.*, the scope of Second Amendment rights, particularly, outside the home.

### STATEMENT OF THE CASE

New Jersey maintains a uniquely broad criminal prohibition of handgun "possession" outside one's home or business absent a "permit to carry." N.J. Stat. § 2C:39-5(b). A permit to carry is issued only  upon a judge's finding of "a justifiable need to carry a handgun,"defined as "the urgent necessity for self-protection, as evidenced by specific threats or previous attacks which demonstrate a special danger to the

1

applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun." N.J. Admin. Code § 13:54-2.4(d)(1). Absent such a showing, people may not carry (or otherwise possess) handguns for the purpose of self-defense away from home, except for some narrow exceptions, such as hunting and target shooting. N.J. Stat. § 2C:39-6(e)-(f). Plaintiffs-Appellants ("Plaintiffs") challenge only the requirement that otherwise qualified individuals establish "justifiable need" to exercise their right to bear arms.

The majority upheld this requirement as a "longstanding," "presumptively lawful" regulation falling completely outside the Second Amendment's scope. Slip op. pp. 7, 12-19. Alternatively, it upheld the "justifiable need" requirement by purportedly applying intermediate scrutiny, and finding a "reasonable fit" between limiting the carry of handguns to those facing a "special danger" to their lives and reducing the accidental and criminal misuse of guns, *id.* at 21-31, notwithstanding the state's failure to provide any legislative history, statistical information, or studies justifying its "justifiable need" standard. *See id.* at 25-27; *but see id.* at 61-62 (Hardiman, J., dissenting) ("New Jersey has presented no evidence as to how or why

its interest in preventing misuse or accidental use of handguns is furthered by limiting possession to those who can show a greater need for self-defense than the typical citizen.").

The majority's conclusion conflicts with this Court's prior decisions, as well as with *Heller* and *McDonald*. This Court's precedent counsel against extending *Heller*'s "presumptively lawful" regulatory measures to cover new types of regulations—particularly where, as here, the laws under consideration do not have an historical pedigree dating to the Framing Era. Accordingly, this Court has declined to find that new types of gun restrictions fall outside the Second Amendment's scope.

The majority assumed that the Second Amendment's application anywhere away from the home is doubtful and unclear—a conclusion that conflicts with *Heller* and *McDonald*'s basic rationales, and misconstrues the decisions' holdings. A law prohibiting virtually all responsible, law-abiding adult New Jersey citizens from exercising their fundamental right to bear arms cannot be upheld simply upon asserting a theoretical, unsubstantiated "fit" between the broad preclusion of a fundamental right and public safety. *Moore* v. *Madigan*, 702 F.3d 933, 940 (7th Cir. 2012) ("so substantial a curtailment of the

right of armed self-defense requires a greater showing of justification than merely that the public *might* benefit on balance from such a curtailment, though there is no proof it would"). Indeed, it is not for New Jersey's legislature, or for this Court, to deem a fundamental right too dangerous to be allowed anyone absent "justifiable need."

ARGUMENT

I.  THE DECISION CONFLICTS WITH THIS CIRCUIT'S TREATMENT OF *HELLER*'S "LONGSTANDING," "PRESUMPTIVELY LAWFUL" RESTRICTIONS.

The Supreme Court has offered three "examples" of "presumptively lawful regulatory measures":

> longstanding prohibitions on the possession of firearms by felons and the mentally ill[,] laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, [and] laws imposing conditions and qualifications on the commercial sale of arms.

*Heller*, 554 U.S. at 626-27 & n.26.

But "prudence counsels caution when extending these recognized exceptions to novel regulations unmentioned by *Heller*." *Marzzarella*, 614 F.3d at 93. Hence, this Court declined to categorize a federal law banning firearms with obliterated serial numbers as presumptively lawful, and instead subjected the law to means-end scrutiny, *id.* at

93-101, even though firearms with obliterated serial numbers were "arguably" analogous to "dangerous and unusual weapons" that historically could not be carried. *Id*. at 95. This Court "tread[s] carefully when deciding whether to find conduct not explicitly identified by the *Heller* Court as subject to 'presumptively lawful' restrictions as unprotected by the Second Amendment." *United States* v. *Huet*, 665 F.3d 588, 602 (3d Cir. 2012).

Underlying this Court's cautious approach, wary of finding presumptively lawful restrictions, lay its understanding that such restrictions identify conduct falling outside the Second Amendment's scope. *See Marzzarella*, 614 F.3d at 91; *accord Huet*, 665 F.3d at 600; *United States* v. *Barton*, 633 F.3d 168, 172 (3d Cir. 2011); *but see United States* v. *Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011) (*Heller*'s description of felon-in-possession bans as presumptively lawful "reserves the possibility of yet to be developed qualifications"). As Judge Hardiman recognized,

> [o]ur hesitance to recognize additional exceptions is unsurprising in light of the fact that by doing so we are determining that a certain regulation is completely outside the reach of the Second Amendment, not merely that the regulation is a permissible burden on the Second Amendment right.

Slip op. at 47-48 (Hardiman, J., dissenting).

Moreover, this Court's precedent teaches that longstanding, presumptively lawful restrictions are "derived from historical regulations." *Marzzarella*, 614 F.3d at 93; *Barton*, 633 F.3d at 171 (*Heller*'s delineation of presumptively lawful restrictions "reflects the historical understanding" of the right). For example, although the federal law that presently bars felons from possessing guns dates only to 1961, the practice of disarming dangerous or disloyal individuals dates to the time of ratification. *Barton*, 633 F.3d at 173-74.

The majority disregarded all of these principles in upholding New Jersey's "justifiable need" requirement as an allegedly longstanding, presumptively lawful restriction triggering no constitutional scrutiny whatsoever. Slip op. at 12-19. New Jersey did not condition the right to bear arms on a showing of "need" until 1966. *See* 1966 N.J. Laws ch. 60, sec. 32, § 2A:151-41(a). Prior to that date, "New Jersey allowed the open carry of firearms without a permit." Slip op. at 51 (Hardiman, J., dissenting). The majority found the "justifiable need" requirement "longstanding" because a 1924 law had conditioned the issuance of licenses to carry *concealed* handguns on "need,"*see* 1924 N.J. Laws ch.

137, § 2; Slip op. at 14-15, but the Second Amendment was ratified much earlier.

More fundamentally, laws regulating the *concealed* carry of handguns do not show that laws precluding the carry of handguns generally, in any form, are historically ingrained. Extending "presumptively lawful" status to this type of law allows the exception to swallow the rule, as it is much broader than the two regulations *Heller* provides as examples—laws prohibiting the *concealed* carry of firearms, and laws barring guns from "sensitive places such as schools and government buildings." Indeed, as Judge Hardiman recognized, "[t]he greatest flaw . . . in the majority's analysis . . . is that the longstandingness analysis is conducted at too high a level of generality," conflating laws that merely regulate the manner of carrying firearms with laws that completely preclude the activity. *Id.* at 57 (Hardiman, J., dissenting).

> This distinction is significant because courts have long distinguished between these two types of carry, holding that although a State may prohibit the open or concealed carry of firearms, it may not ban both because a complete prohibition on public carry violates the Second Amendment and analogous state constitutional provisions.

*Id.* at 51-52 (Hardiman, J., dissenting).

The majority's finding that historical authorities upheld complete carry prohibitions is especially troubling. While the Seventh Circuit correctly "regard[ed] the historical issues as settled by *Heller*," *Moore*, 702 F.3d at 941, the laws that the majority invoked "which purportedly banned both open and concealed carry altogether actually provide little support." Slip op. at 56 (Hardiman, J., dissenting); *see English* v. *State*, 35 Tex. 473, 476 (1872) (Second Amendment protects "holster pistols" and "side arms"); *Andrews* v. *State*, 50 Tenn. 165, 188 (1871) (carry prohibition fails "as to this weapon"); *Fife* v. *State*, 31 Ark. 455, 460-61 (1876) (distinguishing "army and navy repeater" from prohibited "pistol"); *see also Wilson* v. *State*, 33 Ark. 557, 559-60 (1878).

II.  THE DECISION'S HOME-CENTERED RATIONALE CONFLICTS WITH *HELLER* AND THE PRIOR DECISIONS OF THIS COURT.

The Second Amendment "guarantee[s] the individual right to possess *and carry* weapons in case of confrontation." *Heller*, 554 U.S. at 592 (emphasis added). "At the time of the founding, as now, to 'bear' meant to 'carry.' When used with 'arms,' however, the term has a meaning that refers to carrying for a particular purpose–confrontation."*Id.* at 584 (citations omitted).

8

Self-defense is the "the *central component* of the right itself." *Id.* at 599 (emphasis in source). The Court struck down a prohibition on the possession of functional firearms, reasoning that the law "makes it impossible for citizens to use [guns] for the core lawful purpose of self-defense and is hence unconstitutional." *Id.*  And because "the inherent right of self-defense has been central to the Second Amendment right," handguns could not banned as they are "the quintessential self-defense weapon" and "the most popular weapon chosen by Americans for self-defense in the home." *Id.*

*McDonald* reiterated that self-defense is central to the Second Amendment's protection, recounting that *Heller* "held" both "that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense," and also "that individual self-defense is 'the *central component*' of the Second Amendment right."*Id.* at 3026, 3036 (quoting *Heller*, 554 U.S. at 599) (emphasis in source).

The majority's decision conflicts with these aspects of *Heller* and *McDonald*. As Judge Hardiman recognized, "[t]o speak of 'bearing' arms solely within one's home not only would conflate 'bearing' with 'keeping,' in derogation of the Court's holding that the verbs codified

9

distinct rights, but also would be awkward usage given the meaning assigned the terms by the Supreme Court." Slip op. at 41-42 (Hardiman, J., dissenting); *see also Moore*, 702 F.3d at 936 ("To speak of 'bearing' arms within one's home would at all times have been an awkward usage. A right to bear arms thus implies a right to carry a loaded gun outside the home.").

> [I]nterpreting the Second Amendment to extend outside the home is merely a commonsense application of the legal principle established in *Heller* and reiterated in *McDonald*: that "the Second Amendment protects the right to keep and bear arms for the purpose of self-defense."

Slip op. at 46 (Hardiman, J., dissenting) (quoting *McDonald*, 130 S. Ct. at 3026). After all, "the need for self-defense naturally exists both outside and inside the home. . . ." *Id.* (Hardiman, J., dissenting). "[O]ne doesn't have to be a historian to realize that a right to keep and bear arms for personal self-defense in the eighteenth century could not rationally have been limited to the home." *Moore*, 702 F.3d at 936.

The majority found that "[i]t remains unsettled whether the individual right to bear arms for the purpose of self-defense extends beyond the home," slip op. at 9, focusing on *Heller*'s language reflecting that the primacy of keeping guns "in the home." *Id.* at 9-11. However,

10

the Supreme Court's observation that the need for self-defense is "most acute" in the home, and that a ban on keeping handguns at home is unconstitutional "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights" does not limit the holding to its facts, nor does its statement that the Second Amendment "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 629, 635. Rather, "[i]n making these comments regarding the home, the Court was merely applying the Second Amendment to the facts at issue in the case before it." Slip op. at 44 (Hardiman, J., dissenting).

"In [*Heller*], we *held* that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense, *and we struck down* a District of Columbia law that banned the possession of handguns in the home." *McDonald*, 130 S. Ct. at 3026 (emphasis added). This "demonstrates that the legal principle enunciated in *Heller* is not confined to the facts presented in that case." Slip op. at 43 (Hardiman, J., dissenting); *see also id.* at 44 ("The application of the law to the facts does not vitiate the Court's articulation of the right to keep and bear arms as a general right of self-defense.").

11

Other courts have recognized that the Second Amendment must apply outside the home. *See, e.g. Moore*, 702 F.3d at 937 ("To confine the right to be armed to the home is to divorce the Second Amendment from the right of self-defense described in *Heller* and *McDonald*."); *Kachalsky* v. *County of Westchester*, 701 F.3d 81, 89 (2d Cir. 2012) ("the Amendment must have *some* application in the very different context of the public possession of firearms").

And notably, this Court observed that *Heller* only "delineates some of the boundaries of the Second Amendment right to bear arms." *Marzzarella*, 614 F.3d at 92. Noting the interest in home self-defense, this Court ruled that "to some degree, [the Amendment] must protect the right of law-abiding citizens to possess firearms for other, as-yet-undefined, lawful purposes." *Id*. As Judge Hardiman pointed out, the majority's discussion of whether the right to bear arms "exists" outside the home "conflicts with *Marzzarella*." Slip op. at 46 n.12 (Hardiman, J., dissenting).

III.   THE MAJORITY DID NOT PROPERLY APPLY INTERMEDIATE SCRUTINY.

To withstand intermediate scrutiny, the government must establish a "fit" between a burden and an important governmental objective

"that is not necessarily perfect, but reasonable"–and that the fit, while "not necessarily the least restrictive means . . . [is] narrowly tailored to achieve the desired objective." *Bd. of Trs. of State Univ. of N.Y.* v. *Fox*, 490 U.S. 469, 480 (1989). The State must show that its policies "do[] not 'burden substantially more [conduct] than is necessary to further the government's legitimate interests.'" *Turner Broad. Sys., Inc.* v. *FCC*, 512 U.S. 622, 664-65 (1994) (*quoting Ward* v. *Rock Against Racism*, 491 U.S. 781, 799 (1989)); *see also Bd. of Trs.*, 490 U.S. at 480 ("in proportion to the interest served") (citation omitted).

Although New Jersey offered no evidence aside from its counsel's assertions, the majority accepted that the justifiable need requirement serves the (duplicative) stated interests of reducing "handgun violence," "the dangers and risks associated with the misuse and accidental use of handguns," and "the use of handguns in crimes." Slip op. at 25 n.17 (quoting appellees' brief). The majority did not consider whether the restrictive justifiable need requirement burdened substantially more conduct than necessary, but instead accepted "[t]he predictive judgment of New Jersey's legislators. . . ." *Id.*

Whatever the label, this was rational basis review—the mere

determination that a "law could be thought to further a legitimate governmental goal, without reference to whether it does so at inordinate cost." *Bd. of Trs.*, 492 U.S. at 480. This approach "effectively applies the rational basis test, contrary to the Supreme Court's explicit rejection of that test in the Second Amendment context." Slip op. at 68 (Hardiman, J., dissenting); *see also Huet*, 665 F.3d at 600 (*Heller* "rejected rational basis review"); *Marzzarella*, 614 F.3d at 95-96 ("*Heller* rejects [the rational basis] standard for laws burdening Second Amendment rights"); Slip op. at 70 (Hardiman, J., dissenting) ("The *Heller* Court rejected this sort of balancing inquiry as inconsistent with the very idea of constitutional rights.").

No reason exists to presume—especially in the absence of any evidence—that those with "a greater need for self-defense" are "less likely to misuse or accidentally use handguns." *Id.* at 63 (Hardiman, J., dissenting). If anything, the opposite conclusion appears more likely, as

> it seems odd to suggest that one who obtains a handgun carry permit because he is in imminent danger is less likely to handle a gun than one who obtains a carry permit because he might want to exercise that right in the future even though he perceives no present danger.

*Id.* at 64 (Hardiman, J., dissenting).

14

The majority's approach burdens far more conduct than is necessary. The fact that almost all other states have adopted far less restrictive policies to regulate the bearing of handguns in public, *see id.* at 34-38 (Hardiman, J., dissenting), indicates that New Jersey could achieve its public safety objectives without precluding the vast majority of its citizens from bearing arms, *see id.* at 66 (Hardiman, J., dissenting) ("a rationing system that burdens the exercise of a fundamental constitutional right by simply making that right more difficult to exercise cannot be considered reasonably adapted to a governmental interest because it burdens the right too broadly").

And setting all this aside, intermediate scrutiny can only balance regulations against rights; it cannot extinguish the right itself.

## CONCLUSION

Plaintiffs respectfully request that the case be reheard en banc.

Dated: August 14, 2013                     Respectfully submitted,

/s/ David D. Jensen                        /s/ Alan Gura
David D. Jensen                            Alan Gura
DAVID JENSEN PLLC                          GURA & POSSESSKY, PLLC
111 John Street, Suite 230                 101 N. Columbus St., Suite 405
New York, New York 10038                   Alexandria, Virginia 22314
(212) 380-6615 tel                         (703) 835-9085 tel
(917) 591-1318 fax                         (703) 997-7665 fax
david@djensenpllc.com                      alan@gurapossessky.com

CERTIFICATE OF COMPLIANCE
AND VIRUS CHECK

1. This brief complies with the type-volume limitation of Fed. R. App. Proc. 35(b)(2) as it is fifteen pages long.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionately spaced typeface using WordPerfect X4 in 14 point Century Schoolbook font.

3. The electronic version of this brief has been checked for computer viruses using Norton 360, version 6.4.0.9, prior to uploading it to the Court's CM/ECF system.  No viruses or other malicious programs were found.

/s/ David D. Jensen
David D. Jensen
Counsel for Appellants

Dated: August 14, 2013

CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2013, I caused the foregoing petition to be filed with the Clerk of the United States Court of Appeals for the Third Circuit via electronic filing. All counsel of record will receive service via the Court's electronic filing system.


/s/ David D. Jensen
David D. Jensen

Counsel for Appellants

August 14, 2013